May it please the Court. Good morning, Your Honors. Monique Olivier for Plaintiff and Appellant Evette Rivera. I'd like to first address the District Court's errors in granting summary judgment to the District, and then I'll turn briefly to the District Court's dismissal of the Union. The Plaintiff has three claims against the District that must go to the jury. She has claims for Title VII discrimination, retaliation, and an Equal Pay Act claim. For each, there are disputed issues of material fact that were required to be heard by a jury. I'd like to first turn to the retaliation claim. The District Court correctly found the Plaintiff had established a prima facie case of retaliation, but it erred when it concluded as a matter of law that the Plaintiff failed to proffer evidence of pretext. The District Court stated that Plaintiff had only raised that issue in passing, but in fact it was a substantial portion of her opposition on summary judgment before the District Court and constituted a substantial portion of the evidentiary record as well. First, the Plaintiff offered uncontradicted evidence that within a month of her complaining to the Board in December of 2013 that she was being discriminated against on the basis of her gender, was not receiving equal pay, and was entitled to reclassification. The District Human Resources Manager, Dolores Turner, issued a memo stating that if there was a determination that reclassification was necessary, the District would react not by reclassifying her and giving her supervisory pay, but instead removing supervisory duties from her sphere of work. Her specifically or that category of work? That is to say, she's got sort of an equivalent person who's a male who does that. One's the West and one's the East. So is the memo saying we're just going to reclassify that job, which would apply then to both, or we're going to reclassify her? Not really. It's basically stating, the memo states, in response to Ms. Rivera's complaint that the position would be reclassified to remove supervisory duties. Now, but would that mean only her position, or would it be also the position of the man, who's got the same position? Well, according to the District, it's the same position. According to Ms. Rivera, the evidence in the record is that she had significantly more supervisory duties than the other Gardner foreman, Stephen Gustafson. The second piece of the memo, in that context we have proximity, and we have temporal proximity in terms of pretext, and then we have the conduct itself. The memo itself, I'm just looking at page 193, does seem to be directed specifically to her. It says the District would identify the supervisory duties and ensure that she no longer performs them, not that we're going to change the position more generally. Thank you, Your Honor. The plaintiff also offered uncontradicted evidence that after she filed her EEOC complaint in July of 2014, her supervisor, Superintendent Lamb, began to retaliate against her in very specific ways. So she received, within a month of that filing, she received her first poor performance review, and in particular noting some absentee issues. But those are the same kinds of issues, as she testifies and is uncontradicted in the record, that she had prior to that review being, prior to the complaint and post-complaint. She also continued to experience, after she made the EEOC complaint, different forms of retaliatory conduct from Superintendent Lamb. Her supervisory, certain supervisory duties were reduced. She was given a counseling memo, and then she was actually written up in May of the following year. And that written warning ultimately was retracted, which is additional evidence, circumstantial evidence, to suggest that when the written memo was issued, when the written warning was issued, it, in fact, was retaliatory. So she had plenty of evidence, there was plenty of evidence in the record, to demonstrate substantial and specific instances of pretext. And as this Court knows, under the Thompson decision, all that is necessary is to show conduct that may have dissuaded a reasonable worker from making a charge of discrimination. The evidence she presented plainly meets that charge here. Taking that issue away from the jury constituted error that needs to be reversed, and it needs to go to the jury for determination. Next, turning to the discrimination claim, the primary error of the district court, I believe, in this claim, is that the court conflates the standards for a prima facie case under Title VII and her Equal Pay Act claim. And those standards, as this Court is aware, are distinct. The prima facie case under Title VII for discrimination, as the Supreme Court has held, is not onerous. If the sum of proffered facts gives rise to an inference of discrimination, plaintiff has met her prima facie case. So the district court correctly finds that the only issue with respect to that, the prima facie case that's sort of in dispute at summary judgment, is whether similarly situated males were treated more favorably. But then the district court essentially gets the analysis wrong. When it discusses similarly situated, it basically states that those, any conclusion of a prima facie case on similarly situated is foreclosed because it had already determined that there wasn't sufficient evidence to state an Equal Pay Act claim. That was an incorrect reading of the law. It was also an incorrect reading of the facts because there's plenty of evidence in the record to suggest that, in fact, she presented evidence that she was similarly situated to this front line maintenance position. And, in fact, if you look at the org chart that's in the record at page 682, you see sort of in very stark visual form all of the front line supervisors and Ms. Rivera and Hoffman. But what about the distinctions with supervising journeyman level technical people? I mean, that seems like the key to what the district court focused on. It seems significant. You just call them all the same, but they're not all the same, are they? That's a fair point. And Plaintiff has never contended that the positions are exactly the same, nor does she need to demonstrate that. And I think this is particularly the case with respect to her Title VII claim because she needs to show that these folks are similarly situated and are treated more favorably. There is no question and it is undisputed that if she had been classified as a supervisor, she would have been entitled to greater pay. And so while there are all of these technical differences in the positions given their technical expertise, the fact of the matter is that the majority of the duties that each of these individuals engaged in were supervisory and management duties, things like performance reviews, things like managing individual person's schedules and issuing counseling memos. Those are all. But you need to know, or at least it seems to me, if you're trying to figure out if they're equivalent, you're supervising what. So if you have a managing attorney in a corporate law firm who has supervisory responsibilities, that's a different nature of supervision compared to someone who's supervising gardeners because there's a lot of technical knowledge that's required in the one and very little in the other. So merely supervising others and managing others doesn't tell me everything I need to know. I appreciate that, Your Honor, but I think there is evidence in the record to suggest greater similarities than you're suggesting. So. What is that, though? I mean, you know, you can call a bank manager that supervises six people a supervisor and assert that someone that supervises 50 branches is a supervisor, and your argument would be they're all the same. I don't believe that's correct, Your Honor. In this case, we have all of these individuals report up to the same person. We have instances where all of these individuals perform out of. But who are you supervising? I think that's the focus. You are supervising tradespeople, and the tradespeople that you are supervising have different skills. We are not disputing that that's the case. But it's the same type of supervision. Tradespeople, journeyman tradespeople with technical knowledge, dealing with electrical issues or mechanical issues, isn't that a completely different difference in kind to supervising? You know, I don't mean to denigrate in any way the value of manual labor or gardening or any of that, but isn't it very different in terms of the sort of mission of the employer and the relative importance of the tasks? So two responses to that, Your Honor. First of all, if you look at Ms. Rivera's deposition testimony in her declaration, she identifies not just these. It doesn't really break down to the technical aspects which she's talking about, and I don't think this is disputed that the majority of tasks are supervisory tasks that involve personnel matters. And so, yes, there may be moments where you're giving technical expertise, and you do see that in the testimony of Superintendent Lamb versus the testimony of Yvette Rivera. But at the end of the day, what I would say to you is those are questions of fact that a jury needs to resolve. She has certainly proffered sufficient evidence and plainly proffered sufficient evidence under a Title VII McDonnell-Douglas analysis to suggest that she is similarly situated enough to this group of individuals who are all entitled to supervisory pay and additional pay on the basis of supervision, that those questions need to be resolved by a jury. But if the question is prima facie case, it doesn't, and even if there's been an established prima facie case under Title VII that these are similarly enough situated that there's an inference of discrimination, the defense that they're different still can come up on summary judgment, correct? It can, Your Honor, but in this case, so she meets her prima facie case, and this is another aspect I want to raise with the court in terms of how the district court got the analysis wrong. There isn't any question that she was treated less favorably. She was not entitled to equal pay. The district court does this analysis that sort of ignores that point, even though the court had recognized that clearly pay was different, and then focuses on this whole issue about reclassification and whether she, and essentially concludes that Ms. Rivera was not treated less favorably because she didn't demonstrate that reclassification had been different as applied to her. But in fact, all the reclassification evidence really goes to pretext. So basically, we don't have any questions. She presents evidence that she's similarly situated to this group of individuals. But my question is, is pretext an issue upon which a summary judgment could be granted? No. In this case, she adduces sufficient evidence of pretext, because what you have is, and that's where this reclassification evidence comes in. And the district court gets the analysis wrong. The district court focuses on reclassification and suggests that she didn't demonstrate that she was treated less favorably. But that's not what the analysis is, because there isn't any question that she's getting paid less. And she puts evidence. The question is the reason for being paid less. Right. And she puts evidence on that she's similarly situated. She's getting paid less. The defendant's response to that, its legitimate business reason that it proffers, is to say, no, she had an obligation to request reclassification, and she didn't do it. So then in response to that, Ms. Rivera puts on evidence of pretext. And what is that evidence? That she requested classification multiple times, that she requested classification in writing and at board meetings, that Superintendent Lamb, during his deposition, does say his understanding is that you just ask for it, and there is evidence to the contrary. But again, that's evidence that has to go to a jury. It is not evidence that can be resolved on summary judgment. Okay. Why don't we hear from the other side, and you've saved a little time. Okay. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Suzanne Solomon, and I represent the defendant, East Bay Municipal Utility District. I first want to address the Equal Pay Act claim. I want to spend the bulk of my time on that, and then get into the retaliation. Maybe could you start with retaliation? The other side started with retaliation. I certainly can, Your Honor. So on retaliation, it is true that there was a Dolores Turner memo. And it is also true that that was not raised as an adverse action, that it's being discussed as evidence of pretext. What needs to be remembered is that, and this ties into the request for reclassification that I'm going to talk about on the other two causes of action, there are classifications. So there's the classification, Gardner-Forman, and then there are positions within that, a number of positions. Ms. Rivera held one, and the man, Mr. Gustafson, had one. What the memo from Dolores Turner indicates is that if we have somebody doing duties that are out of class, we are going to stop them from doing the duties that are out of class, because we want to make sure that people are doing what their job description says. So that is not enough to establish pretext. It's a memo that talks about something that's not an adverse action that is alleged to have been retaliatory. So that is not. Well, I mean, you've now said that a couple times, but why does it matter if it's an adverse action? I mean, to be retaliation, it just has to be something that would discourage a reasonable employee from complaining, right? Well, no, it's not that elastic. It actually needs to have a materially adverse effect on the person's employment under Title VII. The FEHA standard is more relaxed, but under Title VII for retaliation, it needs to have a certain tangible material adverse effect. So having a HR person write a memo that says, we're going to make sure that people are doing the jobs within their classifications, and if they're being asked to do duties that aren't part of their job, we're going to take actions to correct that, that's not an adverse action. I thought, you know, in Burlington Northern, the court held that it doesn't have to be something affecting the terms and conditions of employment, and it could be anything that would dissuade a reasonable worker from making a charge of discrimination. So why, I guess I'm missing, why it has to be some tangible job action? I'm sorry, Director. No, go ahead. Using that standard, an employee learning that if they go to their supervisor or human resources and point out their assertion that they are not doing the job that their job classification says, and the employer says, okay, if you're not doing the job that your job classification says, we are going to take some action. And the action we're going to take happens not to be the action you want, which is we're going to change your job description that applies to you and another person. The action we're going to take actually is we're going to not have you do the duties that it's our intention not to have be included in that job description. That does not meet the standard of, okay, well, I'm not going to complain because if I do complain and I go and I ask for classification, I'll be told what the employer is going to do in response to my assertion that I'm doing job duties outside my classification. What about the other actions alleged to be retaliatory, basically writing her up for absenteeism and so on? So there's no dispute that in 2013 to 2014, she got a performance evaluation that gave her four exceptional ratings, gave her two exceeds ratings, but gave her an unsatisfactory rating for attendance. There's no dispute that her attendance was within the limit that written recommendations said, if you have this amount of unprotected leave, you must get an unsatisfactory rating. There's no dispute on those facts. Ms. Rivera points out the timing. She filed a charge, an administrative charge, in July of 2013 or 2014, and then that same month she gets her performance evaluation, and she claims that that temporal proximity is- Does she claim that she's always been more or less the same in terms of her absenteeism? She had a sentence in her declaration that had no facts, it had no hours, and it did say, basically, my leave has always been the same. That's not enough. The reason that her performance evaluation- Why is that not enough? It's not enough because it's not specific evidence. It's just a- It's a very straightforward statement. It is a very straightforward statement, but the standard is that in order to show pretext at the stage where the employer has articulated a legitimate business reason, you need significant, substantial, specific evidence. Who has the records in terms of her attendance? She has the records in terms of her attendance, so there was no reason why she could not- How do we know that? Does East Bay MUD have the records of her attendance? Yes, yes, and there was exhaustive discovery in this case, and at the time that these motions were filed, she had access to her attendance records. And did anybody put those in, including East Bay MUD? Some of her- I should have thought if they would support you, you would have put them in. Her attendance records are in the record. For the time period at issue- No, I'm talking about the earlier period, because somebody can be written up for something that they've been doing all along, and all of a sudden the hammer comes down when it could have come down before, but for some reason it only comes down now after they've made a complaint. That is- I mean, that's the argument. That is the argument, and that's possible, but what did not happen in this case was that Ms. Rivera did not put in anything other than a sentence, a conclusory sentence, stating my leave was the same. What she didn't put in was her- Let me make sure I ask the question. But East Bay MUD has her employment record in terms of her attendance, right, for the earlier period as well as the later? It does. And it chose not to put them in front of the district court to contradict the statement? It did not because this was, again, this was a summary judgment motion, so in her opposition she puts in this- I should have thought that if the records were available to East Bay MUD and they would have disproved her statement that I've been doing the same attendance all along, that East Bay MUD would have put them in. Except she made the statement in opposition and you can't put in new evidence on a reply. I see. So the first time she makes that, okay. I would like to move on to the discrimination. And are those records that you claim you have, and I assume you're claiming that they disprove her or are you making that claim? No, I'm making the claim that based on the records, those records are not in the record as far as I recall. So you don't know one way or the other? I don't know one way or the other. But what I do know is that she does not dispute that her leave was what it was that led to her getting the unsatisfactory rating. I want to move on to gender. The court did not confuse the standard that applies to the Equal Pay Act and to the discrimination claim. Under the Equal Pay Act, it's pretty obvious, and I don't want to belabor the point, that you can't just say I'm a supervisor, she's a supervisor, therefore there's a common core of tasks and you can't ignore the fact. I mean, think about could Ms. Rivera go in and supervise electricians one day? Could she write them performance evaluations? Could she tell you whether she was doing the job? Under Title VII, the reason that Ms. Rivera can't articulate that she was being treated differently than similarly situated males is she can't ignore the existence of Stuart Gustafson, the other person who held her same position, who was a male. Because there was a male holding the same position she had, she can't argue that some circumstances indicated discriminatory intent. The district court did not get those standards incorrect. Denying her request for reclassification. What Ms. Rivera fails to point out is that she stopped the process herself. It's true she asked for a reclassification. It's true that one didn't happen. What's also true is that the reason it didn't happen is that she decided not to fill out the form. It's not true that her supervisor told her he was not going to participate in the process. But is that a tribal issue of fact? It seems to be conceded, or at least not in dispute, that she didn't fill out the form. But the argument I heard was she sort of did the equivalent of that. But she did not do the equivalent of that. And the point, what the form shows is that she needs to go forward and say, here are all the duties that I think I need to do in order to be reclassified. Then the supervisor responds to that. So she can't just bail out of a process and say, I don't need to do that. Mr. Lamb is not responsible for reclassifications. He is a supervisor. HR handles reclassifications. So to the extent he may have said that he thought it worked a certain way, that's not pretextual. That's him not knowing how reclassifications work. Okay, thank you. Thank you. May it please the Court. My name is Carrie Ann Steele, and I'm counsel for AFSCME Local 444, Apelli in this case. We ask that the Court affirm the District Court's grant of a 12b6 motion in favor of AFSCME Local 444 without leave to amend. For at least three reasons. Didn't the Court make a fundamental mistake in basically coming out with the wrong black letter rule that unions, because they're not employers, can therefore have no liability? Isn't that just false as a matter of law? There is a misstatement of law and a footnote. And what the Court, from the entirety of the order, is attempting to express is that individuals cannot be liable under Title VII, and then there's a citation to the Miller v. Maxwell incorporation case. Now, at that moment in the decision, when the Court wrote that in a footnote, there were claims being considered of discrimination and retaliation under Title VII as well as EPA. In paragraphs 100 and 101 of the first amended complaint, those are alleged against a number of defendants. East Bay MUD as an entity, AFSCME Local 444 as an entity, and a number of individuals. That footnote dismissed the individuals. It should have said that there's no liability against individuals. We think that omission of the word individuals in the footnote is a mistake that could be overlooked. It was dicta as it pertained to AFSCME Local 444. The decision then proceeds to analyze the entities that are remaining to be considered for Title VII liability, and that would be East Bay MUD as an entity, AFSCME Local 444 as an entity, and there's discussion of the failure by the plaintiff to plead any claims that constitute. Sure, so the normal default is leave to amend. No leave to amend would be appropriate if you look at the entire order. There's already discussion by the Court, Your Honor, in earlier passages about how AFSCME Local 444 is a union, not an employer, and it does not decide who's a supervisor. It doesn't, but it has the ability, doesn't it, to intercede, to request reclassifications, to do all the functions that a union can do when you have, I assume, a collective bargaining agreement with negotiations between both sides? In this civil service system that East Bay MUD has, the classification plan is designed by the employer. This is pursuant to the authority of the Public Utilities Code. They have civil service rules that spell out the classification plan and how it will operate, as well as how to study whether a current classification is appropriate. There's no possible way, so essentially any leave would have been futile. Yes, and so what we're asking this Court to do, which was an earlier question posed in a case this morning, is to look at that footnote as what it is, which is merely a misstatement of the law because there's an omission of the word individual before the statement defendants, and then to look further and say on the face of this complaint, the First Amendment complaint, there is no possible way that claims of Title VII discrimination or retaliation could be stated against AFSCME Local 444. It was not in a position to be able to change Ms. Rivera's status. That is something that is done through a reclassification request through the Human Resources Office. This was not about a provision that is in the Memorandum of Understanding, in other words, the collective bargaining agreement. That would be the domain of the union and something the union could be involved in. Can't you have discrimination if you fail to even, for a discriminatory reason, pursue the rights of the plaintiff on the basis of gender, for example? Not where, like here, there is access exclusively by the employee to the procedure, not by the union. Just to be clear, if an employee went to the union and said, I think I'm being misclassified, can you help me, the union would say, there's nothing we can do for you, go talk to HR? I'm not saying that that would be their practice and that there is necessarily a history of that happening here. What we are saying, and on the face of the complaint, it's evident that, and now through the developed record, it's confirmed that it's the employee's right of access to that procedure. The union is not involved. It's not a subject under the collective bargaining agreement. And certainly the union has no ability to determine whether someone is a supervisor. You may not have the ability to determine it, but I guess I understood her complaint to be suggesting that, or the proposed amendment to the complaint maybe to be suggesting that the union would be able to pursue a grievance or do something to help the employee and that, you know, if they were doing that on behalf of male employees who complained but not on behalf of her, that would be the allegation she was making. And you're saying that there isn't anything meaningful that the union would be able to do to help an employee in that situation? That is what I'm saying, Your Honor, that there's a fundamental misunderstanding of what the union can do in this particular instance. And on the face of the complaint, it's clear that no amendment could have salvaged her claim. It would be futile to do so at this point. So we ask you to please affirm the order. We also ask you to grant our request for judicial notice because it is important to see those civil service rules showing exclusive access by the employee to the reclass procedure. And they also contain the memorandum of understanding that show that the employee has no right of recourse under the collective bargaining agreement. Do you have any more questions for me? I'm out of time. I think not. Thank you very much.  Response. So let me briefly address the union's arguments. On this record, there is no question that plaintiff is entitled to leave to amend to assert her claims. If you look at her original complaint that was dismissed, she absolutely has plenty of allegations in there to attack the union's conduct with respect to gender discrimination and retaliation. And as we know from the record that is now developed, it is false that the union does not have power to engage in reclassification attempts. It's in the record that it has the authority to work with the district and with Local 1 to make that happen, and it has done so. So on that issue, certainly the order of the district court needs to be remanded, and Plaintiff Rivera needs the opportunity to appropriately amend to bring the union back into the case. Could you respond to what we heard with respect to retaliation from the other side? Yes, Your Honor. So Judge Miller gets the analysis correct. The district gets the analysis wrong. They're attempting to graft an adverse action standard onto the retaliation claim, and it is clear under Supreme Court jurisprudence that the conduct has to dissuade a reasonable worker from making a charge. That's the issue. So when you look at, first, the Turner memo, obviously a memo after making a complaint that suggests that your supervisory duties are going to be taken away from you would dissuade a reasonable worker from making a complaint. You also then look at the attendance issue, which Your Honor brought up. It is true that there is no contradictory evidence in the record. What we have is Ms. Rivera's statement saying, I had basically the same amount of leave before and after, and then I was treated differently. It's not true that the district didn't have an opportunity to put evidence in. If there was new evidence offered on the opposition brief, district courts routinely allow responsive evidence in a reply brief. The district failed to do that, so that is a question of fact that has to go to the jury. And her statements are specific and substantive evidence with nothing to contradict, and those are just simply questions that a jury must resolve. They're not questions that can be resolved on summary judgment. I think you might have misstated. You said there's no evidence that their attendance record was the same. I think her statement is itself evidence. There may be better evidence in the sense of the records, but her statement is, of course, evidence. I'm sorry, Your Honor, yes. Her statement is evidence that it's the same. The district did not rebut that evidence by putting anything in to show, no, in fact, to their argument, no, in fact, that the attendance issues were woefully worse afterward. Right. Now, I just heard this morning that she has the better evidence of her actual attendance records. How do we know that? We don't, Your Honor. We don't have it. There's nothing in the record to suggest that she has the records. The district doesn't have the records. In the ordinary situation, somebody shows up at work and does not keep time cards at home and check off. I went to work at 8 o'clock and I came home at 5. Correct, Your Honor. Unless I've got more evidence that she has the records than simply the statement of counsel, I'm not convinced that she does have the records. There is nothing in the record one way or the other on that, Your Honor. And then with respect to this audit form, again, that's a triable issue of fact, and just the argument, I think, really supports that this is an issue a jury needs to resolve. The fact that Superintendent Lamb isn't in HR doesn't change the fact that what you have in the record is Ms. Rivera complaining directly to HR in writing and requesting classification and then going to the board to do so. So to say that she wasn't noisy about her request would be a gross misstatement, and it clearly presents enough evidence in the record that a jury would have to decide if the defendant's argument that she didn't complete the right form and that's why reclassification didn't occur, whether that is pretextual. Okay. Thank you. With that, I'll leave it. Thank you, Your Honors. Thank both sides for their helpful arguments. Rivera v. East Bay Mudd submitted.
judges: W. Fletcher, Miller, Pregerson